# IN THE SUPREME COURT OF THE STATE OF NEW MEXICO

Opinion Number: 2021-NMSC-003

Filing Date: November 30, 2020

No. S-1-SC-37039

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.

**ELEXUS JOLAINE GROVES
and PAUL ANTHONY GARCIA,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY
Brett R. Loveless, District Judge**

Released for Publication January 26, 2021.

Hector H. Balderas, Attorney General
M. Victoria Wilson, Assistant Attorney General
Santa Fe, NM

for Appellant

Jeffrey J. Buckels
Albuquerque, NM

for Appellee Elexus Jolaine Groves

Harrison & Hart, LLC
Nicholas Thomas Hart
Albuquerque, NM

for Appellee Paul Garcia

**OPINION**

**THOMSON, Justice.**

**{1}** This opinion addresses New Mexico's application of the felony murder statute, NMSA 1978, § 30-2-1(A)(2) (1994).[1] More specifically, the present issue concerns a subrule of felony murder—the collateral felony rule that the predicate felony to a felony murder "must be independent of or collateral to the homicide." *State v. Harrison*, 1977-NMSC-038, ¶ 9, 90 N.M. 439, 564 P.2d 1321, *superseded by court rule on other grounds as recognized in Tafoya v. Baca*, 1985-NMSC-067, ¶ 17, 103 N.M. 56, 702 P.2d 1001. The last time this Court addressed the collateral felony rule, we replaced an elements test with the felonious purpose test to determine whether a particular felony was "a collateral felony for purposes of felony murder." *State v. Marquez*, 2016-NMSC-025, ¶¶ 22-24, 376 P.3d 815. The test requires the felony that forms the basis of a charge of felony murder (the predicate felony) to have a felonious purpose different from that of "endangering the physical health of the victim." *Id.* ¶¶ 24-25. Put another way, a felony cannot serve as a predicate felony if the defendant's purpose in committing the felony is to injure or kill another. *Id.* ¶¶ 19, 23-25.

**{2}** The sole issue before the Court in this interlocutory appeal is whether aggravated fleeing a law enforcement officer, NMSA 1978, § 30-22-1.1 (2003), may serve as a predicate felony to support a charge of felony murder. We conclude that aggravated fleeing a law enforcement officer does have an independent felonious purpose and, as we explain, may serve as a predicate felony so long as the requisite mens rea is also present.

## I.     BACKGROUND

**{3}** For purposes of this interlocutory appeal, the following facts are not disputed. Codefendants Elexus Groves and Paul Garcia (Defendants) stole a van from an Albuquerque business. Groves drove, and Garcia rode in the passenger seat. Rather than stopping when they realized that police were in pursuit, they fled. During the pursuit through residential neighborhoods, Groves drove in excess of the speed limit, at one point reaching a speed of 78 miles per hour (mph) in a 35 mph zone. Their flight from law enforcement ended when Defendants ran a stop sign and hit another car while driving at 68 mph. Two passengers in the car that Defendants hit died from injuries sustained in the collision, and the third passenger sustained injuries. Defendants fled from the scene on foot, stole a second vehicle, abandoned that vehicle soon afterwards, and were later apprehended.

**{4}** The State charged each Defendant with (1) two counts of first-degree murder (felony murder), § 30-2-1(A)(2), or, in the alternative, two counts of homicide by vehicle (reckless driving), NMSA 1978, § 66-8-101(D)(2016) and (2) aggravated fleeing a law enforcement officer, § 30-22-1.1. Relevant to this appeal, the State proffered the crime of aggravated fleeing a law enforcement officer, a fourth-degree felony, as the predicate felony for felony murder. The Defendants moved the district court to dismiss the two counts of felony murder against each of them. They argued that aggravated fleeing a

---

[1]The New Mexico felony murder statute "was enacted in 1907." *State v. Hines*, 1967-NMSC-237, ¶¶ 9, 21, 78 N.M. 471, 432 P.2d 827; *see* 1907 N.M. Laws, ch. 36, § 1 ("All murder . . . which is committed in the perpetration of or attempt to perpetrate any felony . . . shall be deemed murder in the first degree[.]").

law enforcement officer cannot serve as a predicate felony for felony murder. The district court agreed and dismissed the first-degree murder charges.

**{5}** The district court reasoned that "the felonious purpose [of aggravated fleeing a law enforcement officer] is flight which *endangers* the public" and therefore that the purpose of committing the felony is the same as the purpose of committing a homicide. (Emphasis added.) The district court concluded that aggravated fleeing a law enforcement officer may not serve as the predicate felony for a felony murder charge under *Marquez*.

**{6}** The State sought interlocutory appeal of the district court's order pursuant to NMSA 1978, Section 39-3-3(B)(1) (1972) and Rule 12-201(A)(1)(b) NMRA. We take this opportunity to correct the reasoning of the district court, and we conclude that the district court erred by dismissing the first-degree murder (felony murder) charges. As we explain, aggravated fleeing has a felonious purpose independent from that of second-degree murder, and therefore the State may attempt to prove the charges of felony murder using aggravated fleeing a law enforcement officer as the predicate felony. In focusing on the felonious purpose test, we specifically note that the felonious purpose of a criminal act is distinct and separate from a defendant's mens rea, and we caution practitioners and courts against merging the two.

## II.    DISCUSSION

**{7}** New Mexico's murder statute broadly states that "[m]urder in the first degree is the killing of one human being by another without lawful justification or excuse, by any of the means with which death may be caused . . . in the commission of or attempt to commit *any felony*." Section 30-2-1(A)(2) (emphasis added).[2] This type of first-degree murder is often discussed using the term *felony murder* because it is based on, or *predicated on*, the commission of another felony.[3] It is the Legislature's prerogative to enumerate which felonies may serve as predicate felonies for felony murder, but so far the Legislature has chosen not to do so. *See* § 30-2-1(A)(2). Without further legislative guidance, this Court, through a number of cases, has attempted to discern what the Legislature meant by "any felony" because, despite the broad language of the statute, this Court has "repeatedly emphasized that the Legislature intended to limit the application of [felony murder]." *Marquez*, 2016-NMSC-025, ¶ 14.

**{8}** The purpose of the felony murder statute is to deter killings that occur in the course of grossly negligent or reckless conduct. *See, e.g., State v. Campos*, 1996-NMSC-043, ¶ 16, 122 N.M. 148, 921 P.2d 1266. However, we must balance this statutory purpose with the need to preserve the mens rea requirements for each legislatively defined category, or degree, of murder.

---

2*Accord* 1907 N.M. Laws, ch. 36, § 1 ("All murder which shall be perpetrated . . . by any kind of wilfull, deliberate and premeditated killing, or which is committed in the perpetration of or attempt to perpetrate *any felony* . . . shall be deemed murder in the first degree." (emphasis added)).
3Throughout this opinion, we use the term *predicate felony* in reference to the "any felony" language in the felony murder statute. *See* § 30-2-1(A)(2).

**{9}**     In this case, we consider which felonies are appropriate predicate felonies for felony murder, which are not, and how to know the difference. Our analysis centers on the three requirements that a felony must meet before it can be the predicate to felony murder: "(1) there must be a causal relationship between the felony and the homicide, (2) the felony must be independent of or collateral to the homicide, and (3) the felony must be inherently or foreseeably dangerous to human life." *Harrison*, 1977-NMSC-038, ¶ 9. We discuss each requirement.

## A.     Causal Relationship

**{10}**     The felony murder statute states that the death must occur "*in the commission of or attempt to commit* any felony." Section 30-2-1(A)(2) (emphasis added). However, just because a death occurred when and where a defendant committed a felony does not mean that commission of the felony caused the death. *See Harrison*, 1977-NMSC-038, ¶ 10. There must be more linking the death to the felony than mere coincidence of time and place; "a more exact definition of causation is required." *Id.* ¶¶ 10-11. *Harrison* requires that "causation must be physical; causation consists of those acts of defendant or his accomplice initiating and leading to the homicide without an independent force intervening, even though defendant's or his accomplice's acts are unintentional or accidental. Causation . . . primarily deals with the actus reus of the crime." *Id.* ¶ 11 (footnote omitted). The law requires a fundamental nexus between the act of the felony and the death. That is, the actus reus of the felony must have an actual connection to the cause of the death.

**{11}**     In this case, neither party disputes that there was a causal relationship between the felony and the deaths because Defendants' felonious act of aggravated fleeing, without an intervening force, caused a car crash that resulted in both deaths. Therefore, the predicate felony in this case satisfies the first *Harrison* requirement.

## B.     Collateral Felony Rule: A Predicate Felony Must Be Independent of or Collateral to the Homicide

**{12}**     We now turn to the second, and perhaps most vexing, requirement, which is embodied by the collateral felony rule: the felony must be independent of or collateral to the homicide to be a predicate felony. As we will explain, we hold that the felonious purpose of aggravated fleeing is to escape apprehension by law enforcement. Because this felonious purpose is independent of the felonious purpose to injure or kill, aggravated fleeing a law enforcement officer may serve as a predicate felony for felony murder in certain circumstances, which we will further explain in the following section.

**{13}**     The discussion of the collateral felony rule compels us to look back at the original purpose of the felony murder statute itself. "The commonly stated purpose of the felony-murder rule was not to deter the underlying felony, but instead to deter negligent or accidental killings that may occur in the course of committing a felony." *Campos*, 1996-NMSC-043, ¶ 9. The policy underlying the felony murder rule is that it should be easier for the state to prove that a defendant intended to harm a victim when the defendant decided to engage in reckless conduct that put others (the victim) in harm's way,

resulting in a death from that conduct. *See id.* ¶¶ 9-10. Charging felony murder lowers the traditionally high threshold for proving a criminal defendant's culpable state of mind when the crime was committed. This relieves the state of the burden to prove premeditation or malice. *Id.* ¶ 16.

**{14}** The primary concern with the application of the felony murder doctrine is that "the prosecution may be able to elevate improperly the vast majority of second-degree murders to first-degree murders by charging the underlying assaultive act as a predicate felony for the felony-murder doctrine." *Id.* ¶ 19. Allowing the state to improperly elevate the vast majority of second-degree murders to first-degree murders "would eliminate the mens-rea requirement for murder in most homicide cases and circumvent the legislative gradation system for classes of homicides." *Id.* ¶ 10. "Our responsibility is to make certain that, consistent with legislative intent, first-degree murder is reserved only for the most reprehensible murders that are deserving of the most serious punishment under New Mexico law." *Marquez*, 2016-NMSC-025, ¶ 24. The proper application of the collateral felony rule attempts to assure the proper use and avoid the misuse of the felony murder doctrine.

> [T]he purpose of the collateral-felony limitation to the felony-murder doctrine is to further the legislative intent of holding certain second-degree murders to be more culpable when effected during the commission of a felony—thereby elevating them to first-degree murders—while maintaining the important distinction between the classes of second- and first-degree murders.

*Id.* ¶ 15 (quoting *Campos*, 1996-NMSC-043, ¶ 22 (internal quotation marks omitted)).

**{15}** The collateral felony rule guards against misuse by requiring that a "predicate felony cannot be a lesser-included offense of second-degree murder." *Campos*, 1996-NMSC-043, ¶ 19. In other words, a predicate felony cannot be "the underlying assaultive act" that caused the death of the victim; the predicate felony must be a separate and independent crime from the homicide. *See Campos v. Bravo*, 2007-NMSC-021, ¶ 10, 141 N.M. 801, 161 P.3d 846. The felony cannot be so similar in type to second-degree murder that if performed more aggressively, second-degree murder may have resulted. *See id.* For instance, the felony of aggravated battery cannot be a predicate felony because it is a lesser-included offense of second-degree murder. *Marquez*, 2016-NMSC-025, ¶ 18; *Campos*, 1996-NMSC-043, ¶ 23. In *Marquez* we put it this way: "The difference between aggravated battery and second-degree murder is . . . a difference of *degree*, not of *kind*[.]" 2016-NMSC-025, ¶ 18 (emphasis added). If the difference between the felony proffered as a predicate felony and second-degree murder is one of *degree*, it will fail the collateral felony rule. *See id.* If the difference between the felony proffered as a predicate felony and second-degree murder is one of *kind*, it is more likely to be an appropriate predicate felony under the collateral felony rule. *See id.*

**{16}** The collateral felony rule makes sense when we consider that "the vast majority of homicides are predicated on an initial felonious assault or battery of some kind."

*Campos*, 1996-NMSC-043, ¶ 10. But we know that even though assault or battery underlies almost every homicide, not every homicide is first-degree murder. Some homicides are committed with a less culpable mental state, and thus the Legislature has determined that such acts are more appropriately charged as second-degree murder or manslaughter. *See* § 30-2-1(B) (requiring for a conviction of second-degree murder that the defendant's culpable mental state was "know[ing] that such acts create[d] a strong probability of death or great bodily harm"); *see also* NMSA 1978, § 30-2-3 (1994) (lacking a mens rea requirement for a conviction of manslaughter, which is "killing [] a human being without malice"). Indeed, variation in the defendant's culpable mental state at the time of the killing explains why the Legislature has delineated the various degrees of homicide. The collateral felony rule prevents the felony murder doctrine from eroding the central distinction between first-degree and second-degree murder. *See Bravo*, 2007-NMSC-021, ¶ 10. Without the collateral felony rule, the state would be permitted to elevate most second-degree murders to first-degree murders, as nearly all second-degree murders involve some type of felonious, assaultive conduct. *See id.*; *Marquez*, 2016-NMSC-025, ¶ 16 ("[A]ll or virtually all murders include the commission of some underlying felony in the nature of an assault or battery.").

**{17}** In determining whether a particular felony is independent of and collateral to the homicide and whether a particular felony is a lesser-included offense of second-degree murder, this Court "look[s], not to the nature of the act, but rather to whether the legislature intended that a particular felony should be able to serve as a predicate to felony murder." *State v. Duffy*, 1998-NMSC-014, ¶ 23, 126 N.M. 132, 967 P.2d 807, *overruled on other grounds by State v. Tollardo*, 2012-NMSC-008, ¶ 37 & n. 6, 275 P.3d 110; *see also Campos*, 1996-NMSC-043, ¶¶ 20, 22. Prior to *Marquez*, this Court employed a strict elements test to determine whether a particular felony was a lesser-included offense of second-degree murder, which would disqualify its service as a predicate felony for felony murder. *See Duffy*, 1998-NMSC-014, ¶¶ 23-24 (concluding that "whether the legislature intended that a particular felony should be able to serve as a predicate to felony murder[,] . . . should be answered, in most circumstances, by application of the strict-elements test" to determine whether it would be possible to commit the homicide without also committing the felony). In *Marquez*, we announced and applied a new test—the felonious purpose test—to determine whether an underlying felony was actually a lesser-included offense of second-degree murder or whether it was an appropriate collateral felony that could support a charge of felony murder. *Marquez*, 2016-NMSC-025, ¶ 19. We discuss each test in turn before applying the felonious purpose test in this case.

## 1.    The abandoned strict elements test

**{18}** Under the strict elements test, a proffered predicate felony would only fail the collateral felony rule "if all of the statutory elements of the lesser offense [were] *completely embodied* within the statutory elements of the greater offense [(second-degree murder)] such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Duffy*, 1998-NMSC-014, ¶¶ 24-25 (emphasis added) (internal quotation marks and citation omitted). If the felony statute in question provided for multiple means of committing the crime, the proper inquiry was

"whether it [was] possible to commit second degree murder without committing *some form* of the dangerous felony." *Campos*, 1996-NMSC-043, ¶ 23.

**{19}** The strict elements test allows nearly all felonies besides assault and battery to serve as predicate felonies for felony murder, contrary to the purpose of the collateral felony rule which was adopted to serve as a *limitation* on the use of felony murder. *Marquez*, 2016-NMSC-025, ¶¶ 15-16, 19. Consequently, the *Marquez* Court replaced the strict elements test with the felonious purpose test, stating, "For purposes of the collateral-felony rule, legislative intent is better reflected in an assessment of felonious purpose." *Id.* Accordingly, we apply the felonious purpose test to determine whether aggravated fleeing is a proper predicate felony.

**2.     The felonious purpose test**

**{20}** A crime's objective is its felonious purpose, and if that purpose is something other than "to injure or kill," the felony may serve as a predicate felony to felony murder. *See id.*¶ 19.

> When a crime's objective is to injure or kill, the crime cannot be said to be independent of a murder committed during the course of that crime. It is this aspect of a predicate felony, together with its inherent dangerousness and the presence of a second-degree murder mens rea, that elevates the homicide to first-degree murder.

*Id.*

**{21}** Determining a crime's felonious purpose does not ask what ultimate harm the Legislature was trying to prevent by enacting the criminal statute. This is where the confusion lies and where the district court erred. Ultimately, most criminal statutes are enacted to protect people from danger and preserve public safety. *See e.g.*, *State v. Vest*, 2018-NMCA-060, ¶ 8, 428 P.3d 287 (observing that the felony of aggravated fleeing, § 30-22-1.1(A), and the misdemeanor of resisting, evading, or obstructing an officer, NMSA 1978, § 30-22-1 (1981), "evinc[e] legislative intent to more severely punish people who jeopardize the safety of others while fleeing from law enforcement officers") *cert. granted* (S-1-SC-37210, Sept. 24, 2018). Instead, determining the felonious purpose of a crime requires a court to ascertain the general purpose or goal of a hypothetical offender in engaging in the felonious conduct. The answer to this question illuminates the underlying felonious purpose which the Legislature criminalized.

**{22}** The felonious purpose inquiry is "principally abstract in nature and is based largely on the Legislature's definition of the crime." *Marquez*, 2016-NMSC-025, ¶ 19. At this stage of the analysis, we look only at the language of the statute itself. We do not look at the facts of the case at hand or into the mind of a particular defendant. "[A] dangerous felony may only serve as a predicate to felony murder when the elements of any form of the predicate felony—looked at in the abstract—require a felonious purpose independent from the purpose of endangering the physical health of the victim." *Id.* ¶ 24.

We are determining whether the *felony itself* violates the collateral felony rule, not whether the felony violates the rule *under the specific circumstances of a certain case*.

**{23}**  We demonstrated how the felonious purpose test works in *Marquez* by applying the test to the felonies of robbery, NMSA 1978, § 30-16-2 (1973), and criminal sexual penetration (CSP), NMSA 1978, § 30-9-11 (2009). *Marquez*, 2016-NMSC-026, ¶¶ 20-22. The felonious purpose of a hypothetical defendant in committing the felony of robbery is the "theft of anything of value from the person of another." *Id.* ¶ 22 (internal quotation marks and citation omitted). The felonious purpose of a hypothetical defendant in committing the felony of CSP is "imposition of sexual activity on those who are not willing participants." *Id.* ¶ 20 (internal quotation marks and citation omitted). Though harm may be a consequence of both robbery and CSP, it is not the felonious purpose of either crime. Because their felonious purposes differ from that of the homicide, robbery and CSP are deemed independent of or collateral to the crime of homicide, and either may properly serve as a predicate felony. *Marquez*, 2016-NMSC-025, ¶¶ 20, 22.

**{24}**  The *Marquez* Court applied the felonious purpose test to determine whether shooting at or from a motor vehicle, NMSA 1978, § 30-3-8(B) (1993), is a proper predicate felony, or whether it violates the collateral felony rule. *Marquez*, 2016-NMSC-025, ¶ 23. The Court reasoned that because the language of that statute requires a defendant to have acted with "reckless disregard" for another person's safety, the felonious purpose of that felony is always "to injure the victim." *Id.* ¶¶ 18, 23. The Court concluded that the felonious purpose of shooting at or from a motor vehicle is never independent of the purpose of second-degree murder because the Legislature embedded in the statute the felonious purpose of the hypothetical defendant acting with purposes of "great bodily harm to another person" or "injury to another person." *Id.* ¶¶ 24-25; *see* § 30-3-8(B).

**{25}**  Central to the *Marquez* Court's holding was the fact that the statute criminalizing shooting at or from a motor vehicle required the defendant to have acted with a culpable mental state, which is to have been aware of and to have recklessly disregarded the welfare and safety of another person; that is, the statute required a form of injurious intent. *See Marquez*, 2016-NMSC-025, ¶ 23; *see also* § 30-3-8(B) (defining shooting at or from a motor vehicle as "*willfully* discharging a firearm at or from a motor vehicle *with reckless disregard* for the person of another" (emphasis added)). In contrast, the felony of aggravated fleeing a law enforcement officer does not define the crime in a way that allows courts to infer an injurious intent. *See State v. Padilla*, 2008-NMSC-006, ¶ 14, 143 N.M. 310, 176 P.3d 299 (observing that "the Legislature created a more severe punishment, a felony, when a person 'willfully and carelessly driv[es] [a] vehicle'" (first alteration in original)(quoting § 30-22-1.1(A)).

**{26}**  The aggravated fleeing statute does not require a defendant to possess a culpable mental state of intending to threaten the welfare of another person's physical safety. The statute criminalizes willful and careless driving in a manner that endangers another person. It does not require that a defendant intend to endanger someone. *See* § 30-22-1.1(A) (defining aggravated fleeing a law enforcement officer as "willfully and

carelessly driving [a] vehicle *in a manner* that endangers the life of another person" (emphasis added)). The crime is elevated to a felony based on the severity of a defendant's conduct when he or she intentionally flees the police. The intent element is pointed toward a defendant avoiding apprehension not endangering or harming someone. Thus, courts cannot properly infer that prosecuting a defendant charged with aggravated fleeing a law enforcement officer requires proof of a culpable mental state directed at threatening the physical safety of another, an injurious intent.

**{27}** In an attempt to apply *Marquez*, the district court in this case stated that the felonious purpose of aggravated fleeing was to injure or kill the victim because the statute requires that the felony must be committed "in a manner that endangers the life of another person." Section 30-22-1.1(A). In so doing, the district court effectively substituted the Legislature's ultimate concern in enacting the statute (protecting public safety) for the felonious purpose in committing the offense. The district court improperly inferred an injurious purpose and culpable mental state from the culpable conduct described in the statute (fleeing law enforcement by driving "in a manner that endangers"). *Id.* Although that question was not before the *Padilla* Court, the opinion is nonetheless instructive. *See* 2008-NMSC-006, ¶¶ 15-16. The Court observed that the knowledge of wrongdoing required to establish

> aggravated fleeing is satisfied when the defendant flees a law enforcement officer with both: (a) the knowledge that the individual is a law enforcement officer, as designated by his [or her] uniform and marked vehicle, and (b) the knowledge that the law enforcement officer has signaled [the defendant] to stop, either by use of a visual or audible signal.

*Id.* ¶ 15. A defendant's intent or culpable mental state is that of fleeing the officer to avoid apprehension, not causing harm to another.

**{28}** It is clear to us that aggravated fleeing a law enforcement officer has a felonious purpose independent of the felonious purpose of second-degree murder. The felonious purpose of the aggravated fleeing statute is to flee from law enforcement to avoid apprehension. *See* § 30-22-1.1(A) ("*Aggravated fleeing a law enforcement officer consists of a person willfully and carelessly driving [a] vehicle* in a manner that endangers the life of another person *after being given a visual or audible signal to stop*, whether by hand, voice, emergency light, flashing light, siren or other signal, *by a uniformed law enforcement officer* in an appropriately marked law enforcement vehicle in pursuit." (emphasis added)). Because aggravated fleeing a law enforcement officer does not have the felonious purpose to injure or kill, this felony does not violate the collateral felony rule and therefore may serve as a predicate felony for felony murder if the defendant acted with the requisite mens rea, as we now explain.

**C.    Inherently or Foreseeably Dangerous to Human Life (Mens Rea Requirement)**

**{29}** Although this issue is not directly before the Court in this appeal we observe that for a felony to be a proper predicate for felony murder, the defendant must have

committed the felony under "inherently dangerous" circumstances, *Harrison*, 1977-NMSC-038, ¶¶ 12, 14, 25, and the defendant must have known that his or her "acts create[d] a strong probability of death or great bodily harm." Section 30-2-1(B) (providing the culpable mental state for second-degree murder); *Duffy*, 1998-NMSC-014, ¶ 20 (explaining that the defendant must act with at least the requisite mens rea of second-degree murder). Unlike the collateral felony rule, this last requirement is not abstract in nature. Rather, it concerns a defendant's *actual* mens rea when that particular defendant committed the crime. This is a relatively recent but paramount requirement of a predicate to felony murder. While the felonious purpose test is more comprehensive than the strict elements test, and certainly more demanding of consistency with the legislative objective, the felonious purpose requirement is still very permissive. In other words, many felonies subjected to the felonious purpose test, including aggravated fleeing a law enforcement officer, will qualify as predicates under the collateral felony rule, which makes the mens rea limitation on predicate felonies crucial to preventing overuse of the felony murder doctrine.

{30}    When the felony murder doctrine originated at English common law, most felonies, including all murders, were punishable by death. *Harrison*, 1977-NMSC-038, ¶ 9. England's common law version of felony murder dictated that "any homicide committed during the perpetration or the attempted perpetration of a felony constituted felony murder" and was punishable by death. *Id.* "Since death also was the punishment for most felonies, it did not matter whether the defendant was put to death for committing the felony or for the homicide." *Id.*

{31}    In *Harrison*, we explained that although our felony murder statute persists today, we do not retain a presumption of mens rea to commit first-degree, willful and deliberate murder. *Id.* ¶ 12. Such a presumption is an entirely unsupportable "legal fiction" with one exception: If the underlying felony in a felony murder case is a first-degree felony, we presume that the defendant possesses the requisite mens rea for first-degree murder. *Id.* "This presumption is inappropriate today for lesser-degree felonies where moral, social, and penal considerations dictate that criminal liability should be imposed according to moral culpability." *Id.* We concluded that if, in the commission or attempted commission of a second-, third-, or fourth-degree felony, a defendant also caused a death, we will not assume that the defendant had the requisite mens rea for first-degree murder. *See id.* ("[O]nly those [felonies] known to have a high probability of death may be utilized for a conviction of first-degree murder.")

{32}    In *Harrison*, we called this assessment the "inherently or foreseeably dangerous to human life test" and explained, "Assuming the actus reus condition is met, the mens rea of one who is committing a felony which is inherently or foreseeably dangerous to human life is sufficient to justify convicting a defendant of felony murder." *Id.* "[I]n a felony murder charge, involving a collateral lesser-degree felony, that felony must be inherently dangerous or committed under circumstances that are inherently dangerous." *Id.* ¶ 14. Whether a felony actually was inherently or foreseeably dangerous to human life is a question for the jury, and "both the nature of the felony and the circumstances surrounding its commission may be considered." *Id.* ¶ 13.

**{33}** In *Ortega* we clarified the *Harrison* mens rea requirement, acknowledging that it should be harder than simply establishing causation for the state to convict defendants who do not truly have a culpable mental state. *See. State v. Ortega*, 1991-NMSC-084, ¶ 25, 112 N.M. 554, 817 P.2d 1196, *abrogated on other grounds by Kersey v. Hatch*, 2010-NMSC-020, ¶¶ 17-18, 148 N.M. 381, 237 P.3d 683 "[E]ven where the felony is a first degree felony or an inherently dangerous one of a lesser degree," the *Ortega* Court questioned whether imputing mens rea based on "*any* presumption—either a conclusive presumption or a burden-shifting presumption—is constitutional, where the effect of the presumption is to establish, or place on the defendant the burden of disproving, that he or she had the requisite *mens rea* to commit first degree murder." *Id.* ¶ 20.

**{34}** In *Ortega* we construed New Mexico's felony murder statute to require "proof that the defendant intended to kill (or had the state of mind otherwise generally associated with *mens rea*)." *Id.* ¶ 23. We held that "there must be proof that the defendant *intended* to kill (or was knowingly heedless that death might result from his conduct)." *Id.* ¶ 25. "An unintentional or accidental killing will not suffice." *Id.* Therefore, the proper inquiry focuses on where a certain defendant lies on a spectrum of intent with "unintentional or accidental" sitting on one end and "intentional" on the other. The closer the circumstances of a particular case are to intentional, the more appropriate it is to infer the requisite culpable mental state.

**{35}** In enacting the felony murder statute, the Legislature determined that

> intent to kill in the form of knowledge that the defendant's acts create a strong probability of death or great bodily harm to the victim or another, [consistent with] second degree murder under Section 30-2-1(B) if no felony were involved, is sufficient to constitute murder in the first degree when a felony *is* involved.

*Id.* (internal quotation marks and citation omitted). The *Duffy* Court interpreted this to mean that "the killing must be second-degree murder, apart from consideration of the underlying felony." 1998-NMSC-014, ¶ 20. That is, the defendant must have a culpable mental state that rises at least to the level of mens rea required for second-degree murder.

**{36}** Whether the defendant's culpable mental state rises to that level will depend on the facts of the case. The fact finder must determine whether a defendant "committed [the felony] under circumstances that are inherently dangerous" and possessed a culpable mental state at least equivalent to that required for second-degree murder. *See Harrison*, 1977-NMSC-038, ¶¶ 12, 14, 25.

**{37}** Thus in this case, the State must establish that while committing aggravated fleeing a law enforcement officer, a fourth-degree felony (the lowest degree of felony in New Mexico), Defendants acted with a culpable mental state equivalent to that of a second-degree murder in that they knew their "acts create[d] a strong probability of death or great bodily harm." *See* § 30-2-1(B) (providing the culpable mental state for second-degree murder).

**{38}** The district court here could find that Defendants fled the police with such disregard for human life that a reasonable jury could find that Defendants knew their acts created a strong probability of death or great bodily harm. *Cf. State v. Varela*, 1999-NMSC-045, ¶ 21, 128 N.M. 454, 993 P.2d 1280 (distinguishing circumstances where there is evidence that a defendant knew a dwelling was occupied when he or she shot into the dwelling from circumstances where a defendant "believe[d] it to be abandoned"). The *Varela* Court opined that the felony of shooting at a dwelling may (or may not) be a proper predicate felony, depending on the evidence presented to establish the defendant's culpable mental state. *Id.*

**{39}** On the other hand, the district court could determine as a matter of law, based on the evidence presented, that the death that resulted from the felony was more accidental than intentional. *See State v. Baca*, 2015-NMSC-021, ¶ 31, 352 P.3d 1151 ("A directed verdict, technically appropriate only in cases tried by a jury, requires a court to decide at the conclusion of the state's case whether the direct or circumstantial evidence admitted at trial, together with all reasonable inferences to be drawn therefrom, will sustain a finding of guilt beyond a reasonable doubt." (internal quotation marks and citation omitted)); *Mayer v. Smith*, 2015-NMCA-060, ¶ 7, 350 P.3d 1191 (observing that "in a non-jury trial, motion for a directed verdict [is], in effect, a motion to dismiss" for insufficient evidence (internal quotation marks and citation omitted)). In such a case, it would be proper to dismiss the felony murder charge.

## III. CONCLUSION

**{40}** In this case aggravated fleeing a law enforcement officer *may* serve as a predicate felony for felony murder because it satisfies the causal requirement and the collateral felony rule. However, whether it is a proper predicate felony here requires the district court to determine whether a reasonable jury could conclude, based on the facts of the case, that Defendants acted with the requisite culpable mental state. We reverse and remand for further proceedings consistent with this opinion.

**{41} IT IS SO ORDERED.**

**DAVID K. THOMSON, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**JUDITH K. NAKAMURA, Justice**

**C. SHANNON BACON, Justice**