This decision of the Supreme Court of New Mexico was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Supreme Court.

**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Filing Date: October 2, 2025**

**No. S-1-SC-40266**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**DANIEL ROBERT CHAVEZ,**

Defendant-Appellant.

**CAPITAL APPEAL**
**Jeffrey A. Shannon, District Judge**

Bennett J. Baur, Chief Public Defender
Kimberly Chavez Cook, Appellate Defender
Thomas J. Lewis, Assistant Appellate Defender
Santa Fe, NM

for Appellant

Raúl Torrez, Attorney General
Walter Hart, Assistant Solicitor General
Albuquerque, NM

for Appellee

**DECISION**

**ZAMORA, Justice.**

## I.  INTRODUCTION

**{1}** Defendant, Daniel Robert Chavez, appeals his conviction for first-degree willful and deliberate murder, contrary to NMSA 1978, Section 30-2-1(A)(1) (1994), arising from the stabbing of Victim, Joshua Trujillo, which resulted in his death. Defendant

argues that this Court must reverse his conviction because (1) there was insufficient evidence to support the jury's finding of first-degree willful and deliberate murder, (2) the district court committed fundamental error in failing to instruct the jury on self-defense, (3) the district court erred in denying Defendant's motion to dismiss alleging a *Brady* violation, and (4) the State engaged in prosecutorial misconduct requiring reversal. We affirm and exercise our discretion to decide this appeal by nonprecedential decision. *See* Rule 12-405(B)(1) NMRA.

## II.    BACKGROUND

{2}    This case arises from the stabbing death of Victim. The following narrative of events is supported by the evidence presented at trial, primarily surveillance footage and testimony. The stabbing occurred while Victim and his girlfriend, Tiffany Miera, were at the Speedway convenience store in El Prado, New Mexico. Defendant, Defendant's girlfriend Katrina Madrid, and Katrina's sister Floralea Trujillo entered the store at the same time as Victim and Tiffany. After entering the store, Victim and Tiffany waited in line at the cash register, when Floralea approached the two, turned to address Tiffany, and threw a bag of chips that hit Victim. Victim did not meet Floralea's conduct with a violent response, but instead took Tiffany under his arm and the two continued to the register to complete their transaction. While Victim faced the register, Defendant continued to stand near the end of the register line and angrily pointed and gestured towards the back of Victim's head before he rejoined Floralea and Katrina near the back of the store.

{3}    While Victim and Tiffany completed their transaction, Defendant remained near the back of the store, and began to wield a knife. Defendant not only had the knife in his hand, but he held the handle firmly within his fist with the blade pointing downwards. Knife in hand, Defendant repeatedly attempted to move towards the front of the store, but Katrina physically tried to stop him from reaching the front door and approaching Victim. After Victim completed his transaction, he and Tiffany walked toward the exit. Tiffany exited the store just before Victim, and as Victim neared the exit, he appeared to see Defendant moving down the aisle in his direction. Victim paused at the doorway and gestured towards Defendant by halfway lifting his arm in his direction with his hand down turned as he was carrying his recent purchase. Tiffany continued walking towards her vehicle in the parking lot.[1] Victim then exited the store.

---

1Defendant asserts that Victim and Tiffany waited for Defendant "for a few minutes" outside of the store and that Defendant only armed himself with the knife after the fight had ensued. Based on our review of the portions of the record cited by Defendant, the evidence does not support and, in fact, contradicts Defendant's characterization of the evidence. We will not scour the record to determine if there is evidence that supports Defendant's version of the facts. *See Heeter v. Heeter*, 1992-NMCA-032, ¶ 15, 113 N.M. 691, 831 P.2d 990 ("This [C]ourt will not search the record to find evidence to support an appellant's claims."). We remind counsel of their responsibility to cite the record to support their view of the evidence and if there is no evidence to support their view, be aware that mischaracterization may amount to an ethical violation. *See* Rule 16-303(A)(1) NMRA (requiring that "a lawyer shall not knowingly . . . make a false statement of fact or law to a tribunal"); *see, e.g.*, *In re Dixon*, 2019-NMSC-006, 435 P.3d 80.

**{4}**    Katrina continued her attempts to stop Defendant from reaching Victim, until Defendant pushed past her and exited the store. Victim, who had been walking towards his vehicle, turned around to face Defendant. As Defendant approached Victim, with knife in hand, Victim punched Defendant in the face. At the same time, Tiffany turned from the vehicle and ran towards the store's entrance. While Defendant and Victim struggled, Tiffany struck Katrina over the head with a liquor bottle, and the two women began to fight. Defendant and Victim also continued fighting, with Defendant pursuing Victim around the vehicle and back again to the front of the store.

**{5}**    Defendant continued to pursue and stab Victim until he successfully retreated to the vehicle, where Tiffany was waiting for him. In total, Defendant stabbed Victim twenty-eight times. Defendant continued to harass Victim and Tiffany by pounding on the passenger side window as they entered the vehicle and by taunting them with arms raised as they drove from the scene. Defendant then discarded the knife, throwing it somewhere outside of the video's frame, and walked away. Defendant left the scene and later arrived at the hospital to seek treatment for his and Katrina's injuries. While at the hospital, Defendant was mirandized and Officer Taylor Gwinn conducted a recorded interview. In that video, Defendant denied that he was involved in a stabbing.

**{6}**    Defendant was later convicted of first-degree willful and deliberate murder and tampering with evidence and was sentenced to life imprisonment plus nine years. Defendant appeals his conviction for first-degree murder directly to this Court. *See* Rule 12-102(A)(1) NMRA (requiring that "appeals from the district courts in which a sentence of . . . life imprisonment has been imposed" be taken to the Supreme Court).

## III.    DISCUSSION

### A.    The Evidence Was Sufficient to Convict Defendant of First-Degree Deliberate Intent Murder

**{7}**    Defendant argues the State did not present sufficient evidence to establish deliberate intent as required to convict him of first-degree willful and deliberate murder. The State responds that the evidence submitted to the jury "amply supported" the jury's finding that Defendant acted with deliberate intent in killing Victim based on evidence of his conduct before, during, and after the stabbing. We agree with the State.

### 1.    Standard of review

**{8}**    The sufficiency of the evidence is measured against the jury instructions, which "become the law of the case." *State v. Arrendondo*, 2012-NMSC-013, ¶ 18, 278 P.3d 517 (internal quotation marks and citation omitted). Evidence is sufficient when substantial evidence "'exists to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction.'" *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (quoting *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314). "We resolve all disputed facts in favor of the State, indulge all reasonable inferences in support of the verdict, and disregard all evidence and

inferences to the contrary." *State v. Rojo*, 1999-NMSC-001, ¶ 19, 126 N.M. 438, 971 P.2d 829.

## 2.    The State presented sufficient evidence of deliberate intent

**{9}**    Defendant was charged with first-degree murder, which criminalizes "the killing of one human being by another . . . by any kind of willful, deliberate and premeditated killing." Section 30-2-1(A)(1). To convict Defendant, the State was required to prove that he killed Victim and that "[t]he killing was with the deliberate intention to take away the life of [Victim]." *See* UJI 14-201 NMRA. Deliberate intent "means arrived at or determined upon as a result of careful thought and the weighing of the consideration for and against the proposed course of action. A calculated judgment and decision may be arrived at in a short period of time." *Id.* However, "A mere unconsidered and rash impulse, even though it includes an intent to kill, is not a deliberate intention to kill." *Id.* For a killing to be deliberate, a defendant "must weigh and consider the question of killing and his reasons for and against such a choice." *Id.*

**{10}**    Taken together, the evidence showed that Defendant's conduct prior to, during, and after the stabbing was sufficient to allow a reasonable juror to determine Defendant had the deliberate intent to kill Victim. Prior to the stabbing, Defendant armed himself with a knife while at the back of the store, waited for Victim to conclude his transaction, and fought back against Katrina's multiple attempts to stop Defendant from reaching Victim. *See State v. Flores*, 2010-NMSC-002, ¶ 22, 147 N.M. 542, 226 P.3d 641, *overruled on other grounds by State v. Martinez*, 2021-NMSC-002, ¶ 87, 478 P.3d 880 (recognizing a reasonable jury can consider a defendant wielding an object "for no other discernible purpose than to use it as a weapon" in finding deliberate intent); *cf. State v. Largo*, 2012-NMSC-015, ¶ 33, 278 P.3d 532 (holding a reasonable jury could conclude the defendant deliberated prior to shooting and killing the victim because the victim physically and verbally resisted).

**{11}**    During the stabbing, surveillance footage and blood spatter evidence demonstrate Defendant engaged Victim in a prolonged struggle where he stabbed Victim twenty-eight times. *See Duran*, 2006-NMSC-035, ¶ 8 (determining a reasonable jury could find Defendant had the deliberate intent to kill based on "the physical evidence of a prolonged struggle and multiple stab wounds").

**{12}**    Finally, after the stabbing, Defendant harassed Victim and Tiffany and showed no signs of remorse, disposed of the evidence by throwing the knife, fled the scene, and attempted to mislead officers. *See State v. Guerra*, 2012-NMSC-027, ¶ 29, 284 P.3d 1076 (allowing the jury to infer deliberate intent because the defendant showed "no remorse after killing the victim"); *see also Flores*, 2010-NMSC-002, ¶ 22 (holding substantial evidence of deliberation could include disposing of evidence, fleeing the scene, and attempting to "deceive and evade the authorities"); *see also State v. Smith*, 2016-NMSC-007, ¶ 20, 367 P.3d 420 (recognizing deliberate intent may be inferred when a defendant flees the scene and attempts to deceive authorities).

**{13}** In light of the evidence presented in this case, we hold that substantial evidence supported the jury's finding that Defendant was guilty of first-degree willful and deliberate murder.

**B.    The District Court's Failure to Instruct the Jury on Self-Defense or Defense of Another Did Not Result in Fundamental Error**

**{14}** Defendant argues the district court erred by not instructing the jury on self-defense. Defendant also appears to make a secondary argument that the district court erred in failing to give a "defense of another" instruction based on his fear for Katrina's safety. The State argues that "no sufficient and substantial evidence at trial supported giving such instructions to the jury." We agree.

**1.    Standard of review**

**{15}** Defendant did not request jury instructions on self-defense or defense of another, so we review his argument for fundamental error. We first determine "whether an error occurred" and, if so, "whether the error was fundamental." *State v. Silva*, 2008-NMSC-051, ¶ 11, 144 N.M. 815, 192 P.3d 1192. "Fundamental error only applies in exceptional circumstances when guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Cunningham*, 2000-NMSC-009, ¶ 13, 128 N.M. 711, 998 P.2d 176 (internal quotation marks and citation omitted). Here, we conclude that the lack of a self-defense or defense of another instruction was neither error nor fundamental error.

**2.    There was insufficient evidence to instruct the jury on self-defense or defense of another**

**{16}** A defendant is entitled to a self-defense instruction when there is sufficient evidence "to allow reasonable minds to differ" as to each of the following elements: (1) "the defendant was put in fear by an apparent danger of immediate death or great bodily harm," (2) "the killing resulted from that fear," and (3) "the defendant acted as a reasonable person would act under those circumstances." *State v. Lopez*, 2000-NMSC-003, ¶ 23, 128 N.M. 410, 993 P.2d 727 (internal quotation marks and citation omitted). The first two elements "are subjective in that they focus on the perception of the defendant at the time of the incident." *State v. Coffin*, 1999-NMSC-038, ¶ 15, 128 N.M. 192, 991 P.2d 477. "[T]he third requirement is objective in that it focuses on the hypothetical behavior of a reasonable person acting under the same circumstances as the defendant." *Id.*

**{17}** Here, the first element is dispositive and, therefore, we need not address whether Defendant presented sufficient evidence to meet the remaining elements. Defendant has failed to put forth evidence to support a finding that he had the subjective belief that there was a "danger of immediate death or great bodily harm" presented against himself or Katrina. *Lopez*, 2000-NMSC-003, ¶ 23; *see State v. Sandoval*, 2011-NMSC-022, ¶ 16, 150 N.M. 224, 258 P.3d 1016 ("'[C]ase law and commentary treat 'defense of

another' and 'self-defense' as virtually identical for purposes of analysis.'" (alteration in original) (quoting *State v. Gallegos*, 2001-NMCA-021, ¶ 7, 130 N.M. 221, 22 P.3d 689)).

**{18}** To support his position that there was sufficient evidence to support the first element, Defendant points to his statements made to police and asserts only that Victim was (1) larger than Defendant, (2) taunting Defendant, and (3) exchanging confrontational looks. New Mexico courts have recognized that size disparity alone is insufficient to satisfy the subjective requirement of threat of death or great bodily harm. *See State v. Duarte*, 1996-NMCA-038, ¶ 10, 121 N.M. 553, 915 P.2d 309. Generally, a defendant may consider other factors in assessing the "quantum of risk" posed against the defendant. *See* 2 Wayne R. Lafave, *Substantive Criminal Law* § 10.4(b), at 200 (3d ed. 2018). However, Defendant also fails to point to any factors or evidence that would demonstrate his subjective belief that the unarmed Victim was capable of inflicting death or great bodily harm.

**{19}** Similarly, there is no indication that Defendant's perception of Victim's "taunts" or "confrontational looks" created the appearance of anything beyond the threat of a simple battery. Defendant points to no evidence that he believed Victim possessed any weapon or that Victim actually used or attempted to use a weapon. The fear of a simple battery, such as a punch to the face, "is not the type of force" that may result in death or great bodily harm and not a situation in which deadly force may be used. *State v. Lucero*, 2010-NMSC-011, ¶ 15, 147 N.M. 747, 282 P.3d 1167. At trial, the jury saw video evidence showing that Defendant was near the back of the store and nowhere near Victim, who was standing at the store's register, when he armed himself with a knife. While Victim did punch Defendant in the face, it was only after Defendant had armed himself with a knife and pursued an unarmed Victim outside of the store. Defendant points to nothing in the record that supports his subjective belief that he perceived a threat of danger of death or great bodily harm and, therefore, fails to show sufficient evidence that a reasonable jury could find that he acted in self-defense. Accordingly, Defendant fails to show that he was entitled to a self-defense or defense of another jury instruction. It follows that the lack of a self-defense or defense of another instruction was not fundamental error.

## C. Defendant Failed to Meet His Burden to Establish a *Brady* Violation

**{20}** Defendant next argues the district court erred by denying his motion to dismiss for a purported *Brady* violation, based on Officer Gwinn's failure to disclose and produce notes related to her investigation of Victim's death. The district court denied the motion after concluding that the failure to disclose Officer Gwinn's notes was not a *Brady* violation, a determination that we review for abuse of discretion. *State v. Turrietta*, 2013-NMSC-036, ¶ 35, 308 P.3d 964 (citing *Case v. Hatch*, 2008-NMSC-024, ¶ 47, 144 N.M. 20, 183 P.3d 905). Under this standard, we affirm the district court "unless its ruling [was] arbitrary, capricious, or beyond reason." *Id.* (alteration in original).

**{21}** "[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good or bath faith of the prosecution." *Brady v.*

*Maryland*, 373 U.S. 83, 87 (1963). To establish a *Brady* violation, Defendant must show "(1) the prosecution suppressed the evidence; (2) the evidence was favorable to the accused; and (3) the evidence was material to the defense." *Hatch*, 2008-NMSC-024, ¶ 44 (internal quotation marks and citation omitted). The State concedes Officer Gwinn failed to disclose her investigative notes, but argues "the [d]istrict [c]ourt correctly concluded there was no *Brady* violation because Defendant failed to show (1) that anything in the missing notes was favorable to him as the accused; and (2) that anything in the missing notes was material to the defense."

**{22}** It is uncontested that Officer Gwinn's notes were lost and not provided to Defendant, so the first *Brady* prong was met. However, Defendant fails to establish that the undisclosed evidence was favorable and that it was material. Defendant argues that, without Officer Gwinn's notes, he was unable to develop his theory of self-defense before trial.[2] Specifically, Defendant asserts the notes would have alerted him to a discrepancy between Officer Gwinn's notes and her police report. The police report stated that Defendant told Officer Gwinn that he did not see Victim with a BB gun before the stabbing. On cross-examination however, Officer Gwinn admitted that *Katrina* had made the statement. Defendant does not explain, and we are unable to discern, how Katrina's statement to Officer Gwinn that she *did not see Victim with a BB gun* was "favorable" to Defendant's self-defense argument. "Evidence is 'favorable to an accused' if its disclosure and effective use 'may make the difference between conviction and acquittal' regardless of whether such evidence is impeachment evidence or exculpatory evidence." *State v. Worley*, 2020-NMSC-021, ¶ 23, 476 P.3d 1212 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). Here, regardless of whether the statement came from Defendant or Katrina, a witness statement that Victim was not seen carrying a BB gun cuts against Defendant's theory of self-defense, which would require that Defendant perceived an apparent threat of death or great bodily harm. *See Lopez*, 2000-NMSC-003, ¶ 23.

**{23}** Defendant also fails to explain why the evidence was material. Suppressed evidence is material only if it "'could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.'" *Worley*, 2020-NMSC-021, ¶ 28 (quoting *Stickler v. Greene*, 527 U.S. 263, 290 (1999)). This prong asks us to determine "whether suppression resulted in prejudice." *Id.* ¶ 17. To make this determination, we "view the suppressed evidence's significance in relation to the record as a whole." *Id.* ¶ 28 (internal quotation marks and citation omitted). Viewed in this way, we cannot conclude that the statement was material. We do not see how the undisclosed notes, which we can only presume correctly recognized that Katrina stated she did not see Victim with a BB gun, undermines the jury's finding of deliberate intent or strengthens Defendant's theory of self-defense. Because Defendant has failed to demonstrate the suppressed evidence was either favorable or material, we hold the district court did not abuse its discretion in ruling that no *Brady* violation occurred.

---

[2]We decline to reach Defendant's secondary argument asking this Court to speculate as to the favorability and materiality of unidentified evidence that may or may not have been contained in Officer Gwinn's notes. *See Hatch*, 2008-NMSC-024, ¶ 55 ("For *Brady* purposes, exculpatory evidence cannot be purely speculative.").

**D. The State Did Not Commit Prosecutorial Misconduct Amounting to Fundamental Error**

**{24}** Defendant argues the State prosecutor, Cosme Ripol, engaged in prosecutorial misconduct through the use of "inflammatory leading questions," "inflammatory language," and the "excessive use of bloody photos to provoke an emotional reaction." "Defendant made no claim of prosecutorial misconduct at trial," so we review for fundamental error. *State v. Carrillo*, 2017-NMSC-023, ¶ 51, 399 P.3d 367. Fundamental error occurs when prosecutorial misconduct is "'so egregious and had such a pervasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial.'" *Id.* ¶ 50 (quoting *State v. Allen*, 2000-NMSC-002, ¶ 95, 128 N.M. 482, 994 P.2d 728). "[W]e must be convinced that the prosecutor's conduct created a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. Sosa*, 2009-NMSC-056, ¶ 35, 147 N.M. 351, 223 P.3d 348 (internal quotation marks and citation omitted). To aid in this determination, three factors "carry great influence in our deliberations: (1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. We evaluate any challenged statements "objectively in the context of the prosecutor's broader argument and the trial as a whole." *Id.* As our review is for fundamental error, we will only upset a jury's verdict "when guilt is so doubtful as to shock the conscience, or . . . when there has been an error in the process implicating the fundamental integrity of the judicial process." *Id.* ¶ 35.

**{25}** In arguing Ripol's conduct amounted to fundamental error, Defendant relies on this Court's recent case, *State v. Lensegrav*, which was filed after the submission of his Brief in Chief. *See* 2025-NMSC-016, 572 P.3d 924. In *Lensegrav*, we held that the same prosecutor involved in this case, Ripol, engaged in "severe and pervasive prosecutorial misconduct." *Id.* ¶ 1. In that case, Ripol "expose[d] the jury to incriminating allegations from a non-testifying [party], repeatedly accuse[d] a defendant of witchcraft, and relie[d] on inflammatory and inadmissible evidence throughout the case." *Id.* This Court was bound to review the defendant's claims for fundamental error because there were no objections below. *Id.* ¶ 27. The Court reasoned that reversal was necessary because "at every stage of the trial—from opening statement through rebuttal argument—the prosecution grounded its case in inadmissible evidence." *Id.* ¶ 29. We agree with Defendant's concession that the conduct in this case does "not sink to the extremes seen in *Lensegrav*." We also hold that Ripol's conduct did not amount to fundamental error.

**1. Inflammatory leading questions**

**{26}** Defendant first argues that Ripol "repeatedly inserted leading and inflammatory language into his direct examination of witnesses." However, for each of the three questions challenged on appeal, Defendant acknowledges that each was met with an objection by defense counsel, challenging Ripol's use of leading questions, and a

curative instruction from the district court instructing the jury to disregard.[3] "[A] trial court can correct any impropriety by striking statements and offering curative instructions." *Sosa*, 2009-NMSC-056, ¶ 25. Defendant does not explain or argue why the district court's curative instruction was insufficient to address any prejudice that may have resulted from the State's use of leading questions. "Only in the most exceptional circumstances should we, with limited perspective of a written record, determine that all the safeguards at the trial level have failed." *Id.* Without such an argument, we see no fundamental error.

### 2.    Inflammatory language

**{27}**    Defendant next challenges Ripol's use of "inflammatory language" during the opening statement. Specifically, Defendant challenges the references to Defendant as: (1) "pitilessly, stabbing" Victim, (2) "hunting down" Victim, (3) a "butcher," (4) a "killer," (5) a "macho man," (6) "prowling, scoping, maddog[ging]" Victim, (7) wearing a "wife beater T-shirt," (8) slaughtering Victim "mercilessly, like a pig," and (9) a "beast." The State defends these characterizations, arguing the "Prosecutor's rhetoric, while emphatic, colorful and graphic, was factually accurate, was based on the evidence expected at trial, was relevant to the material issues of premeditation, deliberation, and Defendant's expected claim of self-defense, and was ultimately within the bounds of proper exposition of the evidence."

**{28}**    Again, because the language challenged on appeal was not objected to below, we are bound to review Ripol's conduct for fundamental error. *See State v. Seaton*, 1974-NMSC-067, ¶ 28, 86 N.M. 498, 525 P.2d 858 ("If [the defendant] thought he was in any way improperly prejudiced or the jury inflamed thereby, it was his duty to object and give the trial court an opportunity to pass upon the propriety or impropriety of the remark."). "An opening statement is intended to serve as a preview of the evidence to be admitted by one or both of the parties." *State v. Gilbert*, 1982-NMSC-137, ¶ 14, 99 N.M. 316, 657 P.2d 1165. "It is within the range of legitimate argument for counsel to discuss all inferences which may be drawn from the evidence and to impress them upon the jury." *State v. Graves*, 1915-NMSC-076, ¶ 29, 21 N.M. 556, 157 P. 160 (internal quotation marks and citation omitted). With the exception of Ripol's language referring to Defendant as a "macho man," and butchering Victim as if he was "a pig," the challenged statements are supported by the evidence produced in trial. We, therefore, do not consider them further in our analysis of this issue.

**{29}**    As for the two instances that were not supported by the evidence, we regard this language as excessive narrative and unprofessional, and we admonish Ripol for engaging in conduct that is potentially "prejudicial to the administration of justice." Rule 16-804(D) NMRA. While a prosecutor may "'strike hard blows, he is not at liberty to strike foul ones.'" *State v. Torres*, 2012-NMSC-016, ¶ 17, 279 P.3d 740 (quoting *Berger v. United States*, 295 U.S. 78, 88 (1935)). The use of this language, however, does not

---

[3]We clarify that our review of these questions is for fundamental error as the objections below were not made on the grounds of prosecutorial misconduct. *See Carrillo*, 2017-NMSC-023, ¶ 51 (holding that the defendant failed to preserve a challenge to prosecutorial misconduct by objecting on other grounds).

require reversal in this case because its use was isolated and brief within the context of the larger opening statement to the jury and the evidence presented at trial. *Sosa*, 2009-NMSC-056, ¶ 26. Due to the amount of evidence presented at trial that supports the inference of Defendant's guilt, "there is no reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *State v. Clark*, 1989-NMSC-010, ¶ 53, 108 N.M. 288, 772 P.2d 322. Therefore, we are unpersuaded that the State's language affected the jury's verdict and do not find fundamental error.[4]

### 3.       Excessive use of bloody photos to provoke an emotional response

**{30}**    Defendant last argues Ripol introduced into evidence an excessive number of photos. Specifically, Defendant challenges the introduction of sixteen photos of blood spatter on the pavement, thirteen photos of blood spatter on Tiffany's car, and four photos of blood on Tiffany. Defendant argues that the photos were not offered as "probative of any fact beyond that [Victim] had been stabbed" and that they were offered solely "to play on the emotions of the jury."

**{31}**    Defendant concedes that there was no objection to the photos' admission into evidence or to how Ripol used the photos during trial. In fact, Defendant stipulated to the photos' admission at trial. "The doctrine of fundamental error cannot be invoked to remedy the defendant's own invited mistakes." *State v. Campos*, 1996-NMSC-043, ¶ 47, 122 N.M. 148, 921 P.2d 1266, *abrogated by State v. Groves*, 2021-NMSC-003, 478 P.3d 915; *see also, e.g.*, *State v. Ortega*, 2014-NMSC-017, ¶ 34, 327 P.3d 1076 ("New Mexico courts 'have consistently followed the ethical maxim that no party can profit by his own wrong.'" (quoting *Proper v. Mowry*, 1977-NMCA-080, ¶ 69, 90 N.M. 710, 568 P.2d 236)). Because Defendant invited the alleged error by stipulating to the admission of the now challenged photos, their use did not result in fundamental error.

### IV.      CONCLUSION

**{32}**    For the reasons stated above, we affirm Defendant's convictions.

**{33}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Justice**

**WE CONCUR:**

**DAVID K. THOMSON, Chief Justice**

---

4Defendant also seems to present a "cumulative error" argument, but he points only to the cumulative effect of the "inflammatory language" used by Ripol in his opening statement. Our determination that only two of the challenged statements were improper and that they did not affect the jury's verdict forecloses this argument. *See State v. Roybal*, 2002-NMSC-027, ¶ 33, 132 N.M. 657, 54 P.3d 61 ("The doctrine of cumulative error applies when multiple errors, which by themselves do not constitute reversible error, are so serious in the aggregate that they cumulatively deprive the defendant of a fair trial.").

**MICHAEL E. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**JULIE J. VARGAS, Justice**