The slip opinion is the first version of an opinion released by the Clerk of the Court of Appeals. Once an opinion is selected for publication by the Court, it is assigned a vendor-neutral citation by the Clerk of the Court for compliance with Rule 23-112 NMRA, authenticated and formally published. The slip opinion may contain deviations from the formal authenticated opinion.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

Opinion Number: _____

Filing Date: **February 24, 2026**

**No. A-1-CA-40726**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.

**RICARDO SOTO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Steven Blankinship, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Tania Shahani, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**OPINION**

**ATTREP, Judge.**

{1}     Following a jury trial, Defendant Ricardo Soto was convicted of one count of perjury, contrary to NMSA 1978, Section 30-25-1 (2009). As proof that Defendant's mental state did not prevent him from knowingly making a false statement, the prosecutor elicited testimony and advanced argument about the fact that, while in custody on a separate, earlier criminal case, Defendant invoked his right to counsel instead of answering officers' accusatory questions. Defendant contends that this was an impermissible comment on his right to counsel and concomitant right to remain silent and that reversal and retrial are mandated. We agree. The United States Supreme Court decades ago held that the state violates due process when it utilizes a defendant's exercise of their constitutional right to remain silent and to consult counsel, after *Miranda* warnings have been given, as proof of the defendant's sound mental state. *See Wainwright v. Greenfield*, 474 U.S. 284, 289-95 (1986). New Mexico appellate courts have not yet had an occasion to apply this long-established principle. We do so today and reverse Defendant's conviction and remand for a new trial.

**BACKGROUND**

{2}     The facts giving rise to the perjury charge at issue in this appeal relate to Defendant's conduct in a separate criminal case for intentional child abuse resulting

in the death of Defendant's two-year-old son. *See State v. Soto*, 2025-NMSC-051, 580 P.3d 781. Defendant was arrested in the child abuse case on June 9, 2018, and his son died on June 10, 2018. *See id.* ¶¶ 8-9, 25. Defendant remained in custody when, on June 13, 2018, an agent and a sergeant from the New Mexico State Police (collectively, the officers) served him with a grand jury target notice for the child abuse case. Before serving Defendant with the notice, the officers met with him in a small visitation room, where they were separated by glass and communicated through phone receivers. The audio of that conversation on the officers' side of the glass was captured by the officers' lapel devices. The relevant portion of this audio is as follows.

Agent: We're here for a couple things, okay. The other night when we spoke to you, we really didn't get a, we weren't really able to get a like a good timeframe as far as on the . . .

Sergeant: His rights.

Agent: . . . the Thursday when 9-1-1 was called, okay. So, the reason we're here we hopefully we can get a better understanding on that morning, okay.

Sergeant: Give him his rights.

Agent: Can we do that?

Agent: Okay, okay. Yeah, he wants his lawyer.

The officers and Defendant then moved to a different visitation room, and the officers served Defendant with the grand jury target notice for the child abuse case.

{3}      Several months later, in February 2019, Defendant challenged the validity of the grand jury proceedings in the child abuse case on the ground that the State withheld exculpatory medical evidence from the grand jury. The State responded that the defense was responsible for notifying the prosecutor of exculpatory evidence prior to the hearing and did not do so. At the hearing on the grand jury motion on March 15, 2019, defense counsel contended that Defendant was not properly served with the grand jury target notice. Defendant took the stand and testified as follows.

Counsel:      Mr. Soto, did you ever receive in the jail, while you were incarcerated, in any time in June [2018], a target letter addressing a grand jury hearing?

Defendant:  No, sir, I did not.

Counsel:      Did you receive other mail or documents while you were in the jail?

Defendant:  No.

Counsel:      Okay. Did anybody inform you there was mail to be picked up when you were released?

Defendant:  No, sir.

Based on Defendant's testimony that he never received a grand jury target notice in June 2018, the State charged Defendant with perjury.

{4}      To prove Defendant committed perjury, the State was required to show:

1.      [D]efendant made a false statement under oath or affirmation to the [district court];

2.      [D]efendant knew the statement to be untrue;

> 3. The false statement was material to the issue or matter involved in the judicial proceeding, which means the statement had a natural tendency to influence the decision of the [district c]ourt;
>
> 4. This happened in New Mexico, on or about the 15th day of March, 2019.

*See* UJI 14-2501 NMRA. The second element—whether Defendant knew the statement was untrue—is relevant to the issue addressed in this appeal. The defense theory was that Defendant attempted suicide on June 11, 2018, after learning about his son's death the day before, and that when the officers delivered the target notice on June 13, 2018, Defendant had gotten out of the hospital, was on medication, and was not in his right mind. Consequently, Defendant contended, he had no memory of being served, so he did not *knowingly* make a false statement on March 15, 2019, when he testified that he was not served with the target notice. To prove that Defendant knew this statement was false, the State relied on Defendant's request for an attorney and resulting silence as evidence of Defendant's sound mental state at the time of service. In support, the State played State's Exhibit 2—the audio recording in which Defendant requested an attorney instead of answering the agent's questions. The State additionally elicited testimony from the officers about Defendant's invocation of counsel and silence, cross-examined Defendant about the same, and utilized the same during closing argument. A jury convicted Defendant of perjury and he appealed.

**DISCUSSION**

{5}    Defendant challenges his conviction on numerous grounds, arguing that (1) the State impermissibly commented on Defendant's exercise of his right to counsel and concomitant right to remain silent; (2) the State engaged in prosecutorial misconduct by misstating the evidence during closing arguments; (3) the perjury charge was the result of prosecutorial vindictiveness; (4) defense counsel's decision to place Defendant on the stand at the hearing on Defendant's grand jury motion in the child abuse case, which gave rise to the perjury charge, constituted ineffective assistance of counsel; and (5) the jury was erroneously instructed on the consequences of an improperly-served grand jury target notice. As for Defendant's first claim of error, we conclude Defendant was deprived of due process and we consequently reverse and remand for a new trial. In light of this, we only briefly address Defendant's remaining claims of error.

**I.    The State's Comment on Defendant's Exercise of His Right to Counsel and Right to Remain Silent as Proof of Defendant's State of Mind Resulted in Fundamental Error**

{6}    Defendant argues that the State impermissibly commented on the exercise of his right to counsel and his concomitant right to remain silent to support its theory of guilt and that reversal is required. Before addressing the merits of this issue, we first must determine if it was preserved. In concluding it was not, and anticipating that our analysis will identify a constitutional issue, our review of this issue is for

fundamental error only. Next, we explain why Defendant's request for an attorney and resulting silence occurred during a constitutionally-protected time period. We then examine whether the State impermissibly commented on Defendant's right to counsel and right to remain silent. Because we conclude this occurred, we finally address whether such error was fundamental.

**A.      Preservation and Standard of Review**

{7}      Evidence of Defendant requesting an attorney instead of answering the agent's questions was elicited by the State through the admission of State's Exhibit 2; the testimony of the officers, commenting on Exhibit 2 and discussing Defendant's invocation of rights; and the cross-examination of Defendant. The prosecutor additionally advanced argument about the foregoing during closing arguments. The State contends that any error resulting from its comment on Defendant's invocation of counsel and silence was invited because Defendant stipulated to playing Exhibit 2 in full even though the State offered to redact the word "lawyer" mentioned by the agent. Even were we to accept that any error with respect to the admission of Exhibit 2 was invited, *see State v. Campos*, 1996-NMSC-043, ¶ 47, 122 N.M. 148, 921 P.2d 1226 (determining that the defendant invited error when he voluntarily "[a]cquiesce[d] in the admission of evidence" and concluding that "[t]he doctrine of fundamental error cannot be invoked to remedy the defendant's own invited mistakes"), *abrogated on other grounds by State v. Groves*,

2021-NMSC-003, 478 P.3d 915, there is no support in the record that Defendant's acquiescence to Exhibit 2 invited the State's subsequent and repeated elicitation of testimony and presentation of argument about Defendant's exercise of his rights to counsel and to remain silent. We thus hold that any error with respect to this evidence and argument was not invited.

{8}     Nevertheless, the record does not demonstrate, as Defendant suggests, that he preserved this claim of error. Although defense counsel objected at numerous points during the testimony of the officers and the cross-examination of Defendant, he never did so on the ground that the testimony constituted an impermissible comment on Defendant's right to counsel or right to remain silent; nor did he object during the relevant portion of the State's closing argument. To preserve an issue, it is necessary for the issue advanced on appeal to have been raised before the trial court with enough specificity to "apprise[] the trial court of the nature of the claimed error and invoke[] an intelligent ruling thereon." *State v. Montoya*, 2015-NMSC-010, ¶ 45, 345 P.3d 1056 (internal quotation marks and citation omitted); *see State v. Ortiz*, 2009-NMCA-092, ¶ 32, 146 N.M. 873, 215 P.3d 811 ("To preserve an issue for review on appeal, it must appear that appellant fairly invoked a ruling of the trial court on the same grounds argued in the appellate court." (internal quotation marks and citation omitted)). Defendant did not do so, and accordingly, his claim that the

State impermissibly commented on his invocation of counsel and silence was not preserved.

{9}     Our standard of review for unpreserved comments on silence depends on whether the defendant's silence was constitutionally protected. *See State v. DeGraff*, 2006-NMSC-011, ¶¶ 12, 14-15, 139 N.M. 211, 131 P.3d 61. As we will explain, Defendant's invocation was so protected, and thus, we review whether the State's comments about that constitutionally-protected silence resulted in fundamental error.[1] *See id.* ¶ 21 ("When a defendant fails to object at trial to comments made by the prosecution about [their] silence, we review only for fundamental error, recognizing that it is fundamentally unfair and a violation of due process to allow an individual's invocation of the right to remain silent to be used against [them] at trial." (internal quotation marks and citation omitted)); *State v. McDowell*, 2018-NMSC-008, ¶ 18, 411 P.3d 337 (applying the fundamental error standard from *DeGraff* "when a prosecutor elicits testimony or comments on a defendant's exercise of their right to counsel" and the issue is unpreserved). "This review consists of two parts.

---

[1]Beyond arguing that any error was invited by Defendant, the State does not dispute that the claim of error is constitutional in nature such that it should be reviewed for fundamental, rather than plain, error. *Compare DeGraff*, 2006-NMSC-011, ¶ 12 (recognizing a constitutional limitation on the use of post-arrest, post-*Miranda* silence and providing that an unpreserved comment on silence in this context is reviewed for fundamental error), *with id.* ¶¶ 14-15 (recognizing "the general absence of a constitutional limitation on using pre-arrest silence to impeach" and providing that an unpreserved evidentiary decision in this context is reviewed for plain error).

We first determine whether any error occurred, i.e., whether the prosecutor commented on the defendant's protected silence." *DeGraff*, 2006-NMSC-011, ¶ 21; *see also McDowell*, 2018-NMSC-008, ¶¶ 4-6 (examining first whether the prosecutor impermissibly commented on the defendant's right to remain silent and right to counsel). Our review at this step is conducted de novo. *See State v. Gutierrez*, 2003-NMCA-077, ¶ 9, 133 N.M. 797, 70 P.3d 787 (stating that "we review de novo the legal question whether the prosecutor improperly commented on [the d]efendant's silence" (internal quotation marks and citation omitted)); *State v. Pacheco*, 2007-NMCA-140, ¶ 8, 142 N.M. 773, 170 P.3d 1011 (same). "If such an error occurred, we then determine whether the error was fundamental." *DeGraff*, 2006-NMSC-011, ¶ 21.

**B.      Defendant's Request for Counsel and Resulting Silence Occurred During a Constitutionally-Protected Time Period**

{10}     As part of our analysis of the first step—i.e., whether the State impermissibly commented on Defendant's exercise of his rights to counsel and to remain silent—we initially examine whether Defendant's request for counsel and silence occurred during a constitutionally-protected time period. Prosecutors in New Mexico long have been limited in commenting on a defendant's exercise of their right to remain silent and their right to counsel.[2] *See McDowell*, 2018-NMSC-008, ¶¶ 4-5; *see also*

---

[2]An accused's invocation of counsel in the face of accusatory questions, such as Defendant's, is considered not just an exercise of the right to counsel but also an

*State v. Callaway*, 1978-NMSC-070, ¶ 10, 92 N.M. 80, 582 P.2d 1293 (providing that "reference to a defendant's silence and/or request for counsel, both in testimony and in closing argument, has been held to constitute reversible error"). This general rule stems from multiple sources—the privilege against self-incrimination in the Fifth Amendment to the United States Constitution, the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and New Mexico evidentiary rules—depending on the time period during which the defendant requests counsel and/or remains silent. *See DeGraff*, 2006-NMSC-011, ¶ 11; *McDowell*, 2018-NMSC-008, ¶ 4. There are four such time periods: "before arrest; after arrest, but before the warnings required by *Miranda v. Arizona*, 384 U.S. 436 . . . (1966), have been given; after *Miranda* warnings have been given; and at trial." *DeGraff*, 2006-NMSC-011, ¶ 11. Each time period affords a defendant a different level of protection against prosecutorial comment on counsel and silence. *See id.* ¶¶ 12-15 (discussing the source of the protection at each time frame and whether the

---

exercise of the right to remain silent and is evaluated the same as standalone silence. *See Wainwright*, 474 U.S. at 295 n.13 ("With respect to post-*Miranda* warnings 'silence,' we point out that silence does not mean only muteness; it includes the statement of a desire to remain silent, as well as of a desire to remain silent until an attorney has been consulted."); *McDowell*, 2018-NMSC-008, ¶ 18 (applying "the same analysis [applicable to comment on silence claims] when a prosecutor elicits testimony or comments on a defendant's exercise of their right to counsel"). *See generally Miranda v. Arizona*, 384 U.S. 436, 469-71 (1966) (explaining that the right to counsel, no less than the right to remain silent, is indispensable in protecting an accused's Fifth Amendment privilege against self-incrimination in the face of custodial interrogation).

state may comment on silence during each as substantive proof of guilt or impeachment evidence).

{11} For the reasons that follow, we conclude Defendant's request for counsel and silence fall into the post-arrest, post-*Miranda* period and, as such, are constitutionally protected. The prosecutor elicited testimony and advanced argument about Defendant's request for counsel and silence while he was in custody on June 13, 2018, for the child abuse case. Immediately preceding Defendant's request for an attorney in the face of accusatory questioning by the agent, Defendant was not read *Miranda* warnings, even though the sergeant plainly indicated a need to do so when he interrupted the agent's questioning by stating "his rights," "give him his rights." The record, however, does not reveal whether Defendant previously was given the required *Miranda* warnings—either when he was taken into custody on June 9, 2018, or at another relevant time before June 13, 2018—such that we can rely on the absence of *Miranda* warnings on June 13, 2018.[3]

{12} When the record does not permit the appellate court to determine whether *Miranda* warnings were given during the relevant time period, as here, courts on appeal have assumed such warnings were given. *See id.* ¶ 13; *Gutierrez*, 2003-

---

[3]At the beginning of the officers' interaction with Defendant at the jail on June 13, 2018, the agent mentioned "the other night when we spoke to you." We understand this to refer to a prior interaction in which the officers questioned Defendant—exactly when this interview occurred or whether Defendant was given *Miranda* warnings at that time are not of record, however.

NMCA-077, ¶ 10; *State v. Garcia*, 1994-NMCA-147, ¶ 11, 118 N.M. 773, 887 P.2d 767. As our Supreme Court explained, appellate courts have declined "to place on [the d]efendant the burden of showing that law enforcement complied with the well-known requirements of *Miranda*. Rather, where such an inference will benefit a defendant, we presume that the warning was given." *DeGraff*, 2006-NMSC-011, ¶ 18. *DeGraff* is particularly instructive. In that case, in the absence of an indication in the record whether the defendant was *Mirandized* at the time of his arrest on unrelated charges, the Court presumed such warnings were given and held that the entire resultant two-week period the defendant was in custody was constitutionally protected under the post-arrest, post-*Miranda* standard. *See id.* ¶¶ 18-19 (considering "[the d]efendant's silence protected . . . from the moment he was arrested"). We employ this same presumption here and assume Defendant was properly *Mirandized* at some point following his arrest on June 9, 2018, and prior to being questioned by the agent on June 13, 2018.[4] *See id.*; *see also Garcia*, 1994-NMCA-147, ¶ 11

---

[4]This opinion should not be read to condone the police practices in this case on June 13, 2018, or to say that had Defendant decided to speak with the officers on that day, instead of requesting an attorney and remaining silent, such statements could have been used against him. *See Miranda*, 384 U.S. at 479 ("[U]nless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against [the defendant]."). Instead, we presume only that, in the absence of some other showing from the State, Defendant was *Mirandized* prior to the questioning on June 13, 2018, for purposes of determining the standard applicable to Defendant's invocation of counsel and silence on that date. *See Garcia*, 1994-NMCA-147, ¶ 11 ("Given the nearly twenty-year-old line of New Mexico cases that disapprove of prosecutorial use of postarrest

(assuming the post-arrest, post-*Miranda* standard applied where the record was unclear whether the defendant was *Mirandized*).

**{13}** We accordingly conclude that Defendant's request for counsel and silence on June 13, 2018, occurred after *Miranda* warnings were given. As a result, "the Due Process Clause of the Fourteenth Amendment . . . protects [Defendant's] post-*Miranda* silence," *see McDowell*, 2018-NMSC-008, ¶ 4, regardless of whether the State utilized this silence as substantive evidence of guilt or to impeach an exculpatory explanation given by Defendant at trial. *See Doyle v. Ohio*, 426 U.S. 610, 618-19 (1976) (holding that, given the assurance implicit in *Miranda* warnings that silence will carry no penalty, "it would be fundamentally unfair" and a denial of due process to allow post-*Miranda* silence to be used at a criminal trial "to impeach an explanation subsequently offered at trial"); *Wainwright*, 474 U.S. at 289-95 (extending the rationale from *Doyle* to hold that it would be a denial of due process to allow post-*Miranda* silence to be used at a criminal trial as substantive evidence of the defendant's mental state).

**{14}** To the extent the State argues that Defendant's invocation of his right to counsel is not constitutionally protected because it occurred during the earlier child

---

silence, if the [s]tate wished to argue that a different standard should apply in the absence of *Miranda* warnings, then, as the proponent of the impeachment evidence, it had the burden to raise that issue and make a factual showing that [the d]efendant received no *Miranda* warnings." (citations omitted)).

abuse case, such argument is not well-taken. At issue here are the "prophylactic rights designed to counteract the 'inherently compelling pressures' of custodial interrogation, including the right to have counsel present," recognized in *Miranda* as guaranteed by the Fifth Amendment. *McNeil v. Wisconsin*, 501 U.S. 171, 176 (1991) (quoting *Miranda*, 384 U.S. at 467). "The Fifth Amendment protections stated in the *Miranda* warnings are a general right against self-incrimination." *DeGraff*, 2006-NMSC-011, ¶ 19. That is, the Fifth Amendment right to counsel, at issue here, is not offense specific. *See McNeil*, 501 U.S. at 176-77. *Compare id.*, *with id.* at 175 (explaining that the Sixth Amendment right to counsel is "offense specific" and "does not attach until a prosecution is commenced"). As our Supreme Court explained, "It would be inconsistent . . . to offer a defendant the implicit assurance [grounded in *Miranda* warnings] that [their] decision to remain silent will not be used against [them], and then add that it may be used in another trial on a different charge." *DeGraff*, 2006-NMSC-011, ¶ 19.

**C.     The Prosecutor Impermissibly Commented on Defendant's Exercise of His Right to Counsel and His Right to Remain Silent**

{15}     Having determined that any exercise by Defendant of his right to counsel and his right to remain silent while he was in custody on June 13, 2018, was constitutionally protected, we turn our attention to whether the State impermissibly commented on the exercise of these rights. *See DeGraff*, 2006-NMSC-011, ¶ 8 (considering "whether the language used was manifestly intended to be or was of

such a character that the jury would naturally and necessarily take it to be a comment on the accused's exercise of [their] right to remain silent" (internal quotation marks and citation omitted)). We have little difficulty concluding such impermissible comment occurred.

{16}     As part of its case in chief, the State played State's Exhibit 2, the officers' lapel recording of their interaction with Defendant on June 13, 2018, including Defendant's request for an attorney in the face of accusatory questions. The State then elicited the following testimony about the lapel recording from the agent. The prosecutor asked, "On the recording, we hear you mention lawyer . . . . Who had mentioned lawyer first?" The agent responded, "Mr. Soto." The prosecutor continued, "And is that his right?" The agent responded, "Yes." In questioning the sergeant about the lapel recording, the prosecutor asked, "What did [the agent] tell you?" The sergeant responded, "[Defendant] wants an attorney." The prosecutor continued, "And did you abide by that?" The sergeant responded, "Yes, of course."[5]

---

[5]In an apparent attempt to diminish the damage from this testimony, defense counsel elicited the following from the sergeant during cross-examination.

Counsel:     And have you been involved in arresting numerous defendants who are not always in their right mind? From alcohol, drugs, mental illness. Have you had that experience?

Agent:       Yes, sir.

The direct implication from this last question was that the officers ceased questioning Defendant and permitted him to remain silent. In questioning the officers, therefore, the prosecutor directly commented on Defendant's exercise of his rights to counsel and to remain silent. *See McDowell*, 2018-NMSC-008, ¶ 6 (concluding that similar testimony amounted to an impermissible comment on counsel and silence).

{17}    The prosecutor persisted in commenting on Defendant's invocation of counsel and silence during cross-examination of Defendant. The prosecutor asked Defendant, "Now on the audio of that contact with the two police officers, they asked you if they could ask you questions about the timeline. . . . And do you recall that you told them that you wanted an attorney?" Defendant responded, "In the audio today, yes." The prosecutor's motive in asking about Defendant's exercise of his

---

| Counsel: | Do sometimes they say I don't want to talk to you, I want a lawyer? |
|---|---|
| Agent: | Yes, sir. |
| Counsel: | It doesn't mean they're clear of mind or clever or conspiring in any way, does it? |
| Agent: | I wouldn't be comfortable answering that question. I just go by what they tell me. |

*Cf. Pacheco*, 2007-NMCA-140, ¶ 6 (involving an attempt by defense counsel at rehabilitation in the face of the state's impermissible comment on the defendant's silence).

rights then became clear. The prosecutor asked, "Would you agree with me that requesting an attorney in the hypothetical, requesting an attorney when two police officers are attempting to interview you is probably a smart assertion of your rights? . . . Would you say that requesting an attorney is a smart decision on your part?" To which Defendant responded, "Yes, sir." The prosecutor continued, "And that's something that you wouldn't take lightly, is that right?" Defendant responded, "That . . . my attorney advised me."

{18}    The prosecutor then explained to the jury in closing arguments why Defendant's invocation of counsel and silence was important to the State's case.

> And [the agent] said [Defendant] wants an attorney. Okay, so why is that important? Well, one, he was presented an issue. We want to talk to you about something. And, he invoked, he made an intelligent decision to require an attorney to be present before he said anything. Again, that goes to state of mind, intelligence. He was with the program and he answered and they left it alone.

Next, in discussing Defendant's actions after the officers gave him the target notice, the prosecutor noted that Defendant began reading the notice but that the officers were "not going to ask [him] any more questions because of the attorney business." Thus, the prosecutor, again, directly commented not just on Defendant's exercise of his right to counsel, but also on his exercise of his right to remain silent. In wrapping up his discussion of the second element of perjury, the prosecutor once more relied on Defendant's invocation of counsel: "And so that's some of the important testimony regarding both of the police officers and they both talked about [the fact

that Defendant] was responsive, he seemed normal. . . . He asked for an attorney. That was an intelligent decision."

{19}     On appeal, the State argues that the foregoing "was not an impermissible comment on [Defendant's] invocation of counsel and does not implicate Defendant's Fifth Amendment right to counsel or silence." Specifically, the State contends a prosecutor is only prohibited from commenting on a defendant's invocation of counsel or silence if evidence of the defendant's silence or the invocation of counsel is used "for the purpose of raising a negative inference that a defendant is guilty because of that defendant's assertion of the protected right." While it certainly is true, as the State suggests, that a prosecutor may not use a defendant's invocation of counsel or silence as proof of guilt to avoid the implication that "the innocent speak, while the guilty remain silent," *see McDowell*, 2018-NMSC-008, ¶ 22, it equally is true that post-arrest, post-*Miranda* protections do not operate so narrowly. This, the United States Supreme Court made apparent forty years ago.

{20}     In *Wainwright*, the Supreme Court held that the state's use of an accused's invocation of counsel and silence in its case in chief to prove the defendant's state of mind violates due process. *See* 474 U.S. at 289-95. The defendant in *Wainwright* was arrested for sexual battery. *Id.* at 286. In response to the officer's *Miranda* warnings, the defendant stated that "he understood his rights and that he wanted to talk to an attorney before making any statement." *Id.* The defendant pleaded not

guilty by reason of insanity; pursuant to state law, the state had the burden of proving the defendant's sanity beyond a reasonable doubt. *Id.* Similar to the case before us, the state in *Wainwright* utilized the defendant's post-*Miranda* invocation of counsel and silence in its case in chief. *Id.* at 292 (observing that "the silence was used as affirmative proof in the case in chief, not as impeachment"). Specifically, the state introduced evidence from two officers who "described the occasions on which [the defendant] had exercised his right to remain silent and had expressed a desire to consult counsel before answering any questions." *Id.* at 287. And similar to the case before us, the prosecutor in *Wainwright* argued to the jury in closing "that [the defendant's] repeated refusals to answer questions without first consulting an attorney demonstrated a degree of comprehension that was inconsistent with his claim of insanity." *Id.*

{21}     In concluding that the foregoing was a violation of the defendant's right to due process, the Supreme Court expanded on its opinion in *Doyle*, 426 U.S. 610. *Doyle* concluded that the government's use of a defendant's post-arrest, post-*Miranda* silence to impeach a testifying defendant's exculpatory explanation at trial "was fundamentally unfair and therefore violated the Due Process Clause of the Fourteenth Amendment." *Wainwright*, 474 U.S. at 289-90. "The source of the unfairness," the Supreme Court explained, "was the implicit assurance contained in the *Miranda* warnings that silence will carry no penalty." *Id.* at 290 (internal

quotation marks omitted). In *Wainwright*, the state argued against the application of *Doyle*, contending, similar to the State's arguments here, that "*Doyle* does not control this case because proof of sanity is significantly different from proof of the commission of the underlying offense, and that the *Doyle* due process rationale thus does not apply." *Wainwright*, 474 U.S. at 292. The Supreme Court rejected this argument and explained why the reasoning from *Doyle* controlled the circumstances in *Wainwright*.

> The point of the *Doyle* holding is that it is fundamentally unfair to promise an arrested person that his silence will not be used against him and thereafter to breach that promise by using the silence to impeach his trial testimony. It is equally unfair to breach that promise by using silence to overcome a defendant's plea of insanity. In both situations, the [s]tate gives warnings to protect constitutional rights and implicitly promises that any exercise of those rights will not be penalized. In both situations, the [s]tate then seeks to make use of the defendant's exercise of those rights in obtaining his conviction. The implicit promise, the breach, and the consequent penalty are identical in both situations.

*Wainwright*, 474 U.S. at 292.[6]

---

[6] The Supreme Court additionally noted that the state's use of silence in *Wainwright*, to prove elements of the charged crime, was "especially egregious" because "unlike *Doyle*, there was no risk that exclusion of the evidence would merely provide a shield for perjury." 474 U.S. at 292 n.8 (alteration, internal quotation marks, and citation omitted). Thus, the constitutional violation was unacceptable to the Court when weighed against either the risk that a witness would go unimpeached or the risk that an essential element for conviction would be proved by commenting on constitutionally-protected silence. Even though the crime charged in the present case was in fact perjury—the risk that the *Doyle* Court acknowledged—the way the State used the comment in this case more closely resembles the "especially egregious" constitutional violation described in *Wainwright*.

{22}     The Supreme Court in *Wainwright* likewise rejected the state's claim that the defendant's invocation of counsel and silence was vital to proving the defendant's sanity. *See id.* at 293-95. The Court observed that "the [s]tate's legitimate interest in proving that the defendant's behavior appeared to be rational at the time of his arrest could have been served by carefully framed questions that avoided any mention of the defendant's exercise of his constitutional rights to remain silent and to consult counsel." *Id.* at 295. This observation, we note, holds equally true in this case. Further, the Supreme Court, quoting the lower court decision, questioned the probative value of silence to prove a defendant's state of mind.

> Post-arrest, post-*Miranda* silence is deemed to have dubious probative value by reason of the many and ambiguous explanations for such silence. . . . For example, one could reasonably conclude that custodial interrogation might intimidate a mentally unstable person to silence. Likewise, an emotionally disturbed person could be reasonably thought to rely on the assurances given during a *Miranda* warning and thereafter choose to remain silent. . . . Silence in the face of accusation is an enigma and should not be determinative of one's mental condition just as it is not determinative of one's guilt. Accordingly, the state should not be permitted to confirm [a defendant]'s mental state with evidence of [their] post-*Miranda* silence.

*Wainwright*, 474 U.S. 294 n.11 (quoting *State v. Burwick*, 442 So. 2d 944, 948 (Fl. 1983); *see also Doyle*, 426 U.S. at 617 ("Silence in the wake of [*Miranda*] warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the [s]tate is required to advise the person arrested."). Similar considerations weigh against the

admissibility of a defendant's silence in New Mexico. *See McDowell*, 2018-NMSC-008, ¶ 4 ("[A]s a matter of New Mexico evidentiary law, because silence is often too ambiguous to have great probative force and may be given improper weight by a jury, evidence of a defendant's silence generally is not admissible as proof of guilt." (alteration, internal quotation marks, and citation omitted)).

{23}     Ultimately, the Supreme Court in *Wainwright* concluded that it was a violation of due process for the state to use the defendant's post-arrest, post-*Miranda* invocation of counsel and silence as evidence of the defendant's sanity. 474 U.S. at 295. We find *Wainwright*'s reasoning and holding equally applicable to the circumstances of this case. Although *Wainwright* involved the state's use of the defendant's exercise of his rights to consult counsel and to remain silent as proof of the defendant's sanity and sound state of mind at the time of the offense, we perceive no material difference between that and the State's use of Defendant's exercise of the same rights as proof of his knowledge and sound state of mind in this case. The unfairness attendant to the situation in *Wainwright* is equally applicable here, and we accordingly hold that a due process violation has occurred in this case. *See id.* at 292.

{24}     The State nevertheless argues that it was permissible to use Defendant's invocation of counsel and silence because "the door [was] opened by the defense." This Court in *Garcia* summarily rejected a similar argument as squarely inconsistent

with *Doyle*. *See Garcia*, 1994-NMCA-147, ¶ 16. In dismissing the state's contention that the defendant opened the door to the prosecution commenting on his post-arrest, post-*Miranda* silence, this Court observed that such an argument "would completely undercut *Doyle*." *Garcia*, 1994-NMCA-147, ¶ 16. *Garcia* explained that "*Doyle* forbids the use of post-*Miranda* silence to impeach an explanation offered at trial." *Garcia*, 1994-NMCA-147, ¶ 16. Thus, "in general, offering an explanation at trial for a defendant's conduct does not open the door to impeachment of that defendant by the introduction of evidence of [their] post-*Miranda* silence." *Pacheco*, 2007-NMCA-140, ¶ 16 (citing *Garcia*, 1994-NMCA-147, ¶ 16). We have been given no reason to depart from this general principle under the circumstances of this case. *See id.* We accordingly conclude that Defendant offering a defense at trial as to his state of mind did not open the door to the State's comment on Defendant's invocation of counsel and silence as either impeachment evidence or substantive proof of guilt. *See Garcia*, 1994-NMCA-147, ¶ 16; *Wainwright*, 474 U.S. at 292, 295 (forbidding, as inconsistent with *Doyle*, the state's affirmative use of post-*Miranda* silence to overcome a defendant's plea of insanity).

{25}     For these reasons, we conclude that *Wainwright* applies to this case, and we hold that the State impermissibly commented on Defendant's post-arrest, post-*Miranda* invocation of counsel and silence.

## D.    The Error in This Case Was Fundamental

{26}    We turn now to the second step of our review—i.e., whether the error here was fundamental. *DeGraff*, 2006-NMSC-011, ¶ 21. "An error is fundamental if there is a reasonable probability that the error was a significant factor in the jury's deliberations in relation to the rest of the evidence before them." *Id.* (internal quotation marks and citation omitted). "[M]ore direct prosecutorial comments on a defendant's invocation of the right to remain silent are more likely to be fundamental error." *Id.* If, however, the evidence of guilt is "overwhelming" and "the prejudicial effect of the prosecutor's comments was minimal," no fundamental error will have occurred. *Id.*

{27}    In this case, the prosecutor directly and repeatedly elicited testimony and advanced argument about Defendant's exercise of his rights to counsel and to remain silent. This evidence and argument effectively struck at the core of the defense—utilizing Defendant's exercise of these constitutional rights against him as affirmative proof that his claim of mental instability lacked credibility and that he possessed the requisite knowledge of the untruthfulness of his statements. As such, the prosecutor's comments plainly had a prejudicial effect. *Cf. United States v. McDonald*, 620 F.2d 559, 564 (5th Cir. 1980) (providing that "[c]omments that penalize a defendant for the exercise of his right to counsel and that also strike at the core of his defense cannot be considered harmless error" (cited approvingly by

*McDowell*, 2018-NMSC-008, ¶ 5)). Moreover, as discussed, Defendant's assertion of rights has questionable probative value as proof of his sound state of mind. *See Wainwright*, 474 U.S. at 294 n.11; *McDowell*, 2018-NMSC-008, ¶ 4. In light of these considerations, we conclude that the prejudicial impact of the prosecutor's conduct in this case was significant. *See McDowell*, 2018-NMSC-008, ¶ 23 (observing that where "reference to a defendant's invocation of [their] constitutional rights lacks probative value, reference by the prosecution to the exercise of such rights has an intolerable prejudicial impact on the jury").

{28}     Nor was the evidence against Defendant overwhelming, particularly as to the second element of perjury—i.e., whether Defendant knew the statement was false. In arguing there was insufficient evidence on this element, defense counsel cited Defendant's testimony that he did not know he had been served with the target notice on June 13, 2018, as well as the fact that Defendant was mentally unstable on that date because of a recent suicide attempt. To rebut Defendant's claims and prove the second element, the State relied on Defendant's request for counsel and resulting silence as evidence of his sound state of mind when he was served with the target notice on June 13, 2018. The only additional affirmative proof on this point was the officers' observation that Defendant was responsive and appeared normal on June 13, 2018. In rebuttal, the State also pointed to the absence of testimony from Defendant about the suicide attempt and about his lack of knowledge as to the falsity

of the statement. Given this record, we cannot conclude that "[t]he evidence at trial was . . . the quantity or quality of overwhelming evidence that overcomes the prejudicial impact of the prosecutor eliciting testimony regarding Defendant's exercise of his constitutional rights." *See McDowell*, 2018-NMSC-008, ¶ 34.

**{29}** We accordingly hold that the prosecutor's comments on Defendant's exercise of his right to counsel and right to remain silent constitutes fundamental error, and we reverse Defendant's perjury conviction. *See id.*; *see also Pacheco*, 2007-NMCA-140, ¶ 19 (concluding the prosecutor's conduct in commenting on the defendant's silence amounted to fundamental error where the evidence was "far from overwhelming" and the comment on silence was highly prejudicial because it directly impeached the defendant's trial testimony and his credibility was of "central importance"). Because Defendant does not challenge the sufficiency of the evidence to support this conviction, and we are otherwise satisfied that there was such evidence, we remand to the district court for a new trial. *See McDowell*, 2018-NMSC-008, ¶ 34; *see also State v. Post*, 1989-NMCA-090, ¶ 24, 109 N.M. 177, 783 P.2d 487 (providing that "we consider all the evidence admitted at trial, including [evidence that should have been excluded], in determining whether retrial is permissible").

## II. We Do Not Resolve Defendant's Remaining Claims of Error

{30} Defendant raises four additional claims of error. As for Defendant's claims of prosecutorial misconduct in closing argument, instructional error, and ineffective assistance of counsel, these issues may arise differently on remand. *See Jacobs v. Stratton*, 1980-NMSC-091, ¶ 16, 94 N.M. 665, 615 P.2d 982 ("We do not decide other issues raised by the parties because they are not necessary to our disposition of this case and the trial court may rule differently on those issues on remand."), *disapproved of on other grounds by Carrillo v. Rostro*, 1992-NMSC-054, 114 N.M. 607, 845 P.2d 130. Regardless, the relief for these claims of error—a new trial—would be no different than what we already have granted.[7] *See McDowell*, 2018-NMSC-008, ¶ 3 ("We do not need to address the remaining issues because the remedy would be the same—a new trial."). We accordingly do not address these claims. As for Defendant's vindictive prosecution claim, Defendant acknowledges this issue was never presented to the district court, but nonetheless requests that we review for fundamental error and "vacate" his perjury conviction. In light of our reversal of Defendant's conviction on other grounds, we leave this issue for the district court to resolve, should Defendant raise it on remand. *See State v. Brule*, 1999-NMSC-026, ¶ 6, 127 N.M. 368, 981 P.2d 782 (providing that "the district court

---

[7]Defendant does not argue that the prosecutorial misconduct in this case rose to the level barring reprosecution on double jeopardy grounds. *See State v. Breit*, 1996-NMSC-067, ¶¶ 2-3, 122 N.M. 655, 930 P.2d 792.

plays an important role in ferreting out evil prosecutorial motives because vindictive prosecution claims often turn on the facts of the case" (internal quotation marks and citation omitted)).

**CONCLUSION**

{31}    For the foregoing reasons, we reverse Defendant's perjury conviction and remand to the district court for further proceedings consistent with this opinion.

{32}    **IT IS SO ORDERED.**


_____
**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**


_____
**SHAMMARA H. HENDERSON, Judge**


_____
**KATHERINE A. WRAY, Judge**